## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**MAXISIQ, LLC, f/k/a IOMAXIS, LLC,
d/b/a/ IOMAXIS,**

      Plaintiff,

      v.

**NICHOLAS HURYSH, JR.,**

      Defendant.

---

**NICHOLAS HURYSH, JR.,**

      Counter-Plaintiff,

      v.

**MAXISIQ, LLC, f/k/a IOMAXIS, LLC,
d/b/a/ IOMAXIS,**

      Counter-Defendant.

Civil No. **22-0314 PJM**

---

**NICHOLAS HURYSH, JR.,**

      Third-Party Plaintiff,

      v.

**BRAD C. BUHR, f/k/a BRAD BOOR,**

      Third-Party Defendant.

1

## MEMORANDUM OPINION

This is the latest in a series of lawsuits involving MAXISIQ, LLC ("IOMAXIS" or "the Company") and its former Member[1] and employee Nicholas Hurysh, Jr. ("Hurysh") regarding the circumstances of Hurysh's removal as a Member and firing as an employee in 2020. In the instant case, IOMAXIS seeks a declaratory judgment that it properly repurchased Hurysh's ownership interest in the Company and that he has no further rights as a past Member. IOMAXIS has moved for summary judgment on this claim. For his part, Hurysh asserts five Counterclaims against IOMAXIS and its Managing Member Brad C. Buhr ("Buhr"), individually, which Counter-Defendants ask the Court to dismiss. Having reviewed the parties' original and supplemental briefs and having held oral argument, the Court now rules on both Motions. For the following reasons, the Court **DENIES** IOMAXIS's Motion for Summary Judgment (ECF No. 11), and **GRANTS IN PART AND DENIES IN PART** IOMAXIS's and Buhr's Motion to Dismiss Hurysh's Counterclaims (ECF No. 25).

## I.   BACKGROUND

IOMAXIS is a small corporation engaged in the communications and computing industries. Hurysh is a former Member and employee of IOMAXIS. Buhr is IOMAXIS's Managing Member. In 2015, IOMAXIS sought to change its State of incorporation from North Carolina to Texas using certain documents: an Amended Operating Agreement dated June 15, 2015 (the "June 15 Agreement") and a Unanimous Consent (collectively, the "2015 Agreements"). At that time, IOMAXIS's Members were Buhr, Hurysh, William P. Griffin, III ("Griffin"), John Spade, Jr. ("Spade"), and Ronald E. Howard ("Howard"). ECF No. 18 ¶ 57. The Company's original North Carolina Operating Agreement as well as North Carolina law

---

[1] "Member" refers to those with an ownership interest in IOMAXIS.

required each of the Members to personally sign any document authorizing a new domicile for the Company. *Id.* ¶ 47. For some reason, however, that procedure was not followed when the change was sought. Buhr, Hurysh, Griffin, and Spade each signed the 2015 Agreements, but Howard did not. Instead, Buhr signed the documents on Howard's behalf, claiming that Howard had "telephonically approved" of the change. *Id.* ¶ 62.

Howard's supposed approval of the 2015 Agreements became the subject of considerable controversy following his death in 2017. After he passed, the remaining Members of IOMAXIS (Buhr, Griffin, Spade, and Hurysh) signed a First Amended Texas Operating Agreement and an Equity Repurchase Agreement (collectively, the "2017 Ratifications"), purporting to endorse the 2015 Agreements. Hurysh takes the position in present case, however, that at the time he signed both the 2015 Agreements and the 2017 Ratifications, he believed Buhr's representations that Howard approved of the change. *Id.* ¶ 64, 70. Hurysh claims that Buhr's representations to that effect were in fact false. Indeed, in 2018, Howard's estate sued IOMAXIS and its Members in North Carolina state court (the "North Carolina Action")[2], alleging that Howard had never approved, telephonically or otherwise, the 2015 Agreements. *Id.* ¶ 26. In that litigation, IOMAXIS agreed to indemnify all its Members and hired counsel to represent them. *Id.* But in August 2020, IOMAXIS terminated its joint defense with Hurysh and ceased to indemnify him or pay his legal costs. *Id.* ¶ 37–43. Hurysh says IOMAXIS did this because he refused to provide false testimony and destroy evidence; the Company maintains that Hurysh was undermining its defense without justification. *Id.* ¶ 30–36, 41.

Hurysh alleges that the next series of events amounted to a concerted and retaliatory effort to "purge" him from the Company. In July 2020, just prior to their falling out, Hurysh

---

[2] That case is *Howard v. IOMAXIS, LLC*, No. 18-CVS-11619 (N.C. Super.).

signed IOMAXIS's Restated Texas Operating Agreement which, like the 2017 Ratifications, purported to sanction the 2015 Agreements. *Id. ¶ 93.* Then, in August 2020, Buhr undertook to convert IOMAXIS to a Delaware corporation and adopted a Delaware Operating Agreement by exercising unilateral authority purportedly granted to him by the Texas Operating Agreement. *Id.* ¶ 94. A month later, in September 2020, IOMAXIS offered Hurysh a part-time position at the Company, indicating that his failure to accept the new job would be considered a resignation. *Id.* ¶ 99–102. Hurysh declined the new job, asserting he had no intention of taking a reduced role, whereupon IOMAXIS terminated his employment. *Id.* ¶ 101, 104. Then, in October 2020, IOMAXIS informed Hurysh it would hold him responsible for the Company's and its Members' legal fees in the North Carolina Action, purportedly because of the "extensive damage" Hurysh had caused their defense strategy. *Id.* ¶ 41–42.

Soon after, in December 2020, IOMAXIS told Hurysh that the other Members had amended the Delaware Operating Agreement to include procedures for removing a Member. In January 2021, approximately one month later, IOMAXIS put those clauses to use when it sent Hurysh a written notice stating that his alleged misconduct could constitute "Cause" for his removal. *Id.* ¶ 109. Hurysh denied the allegations and asserted that the Delaware Operating Agreement, including the removal procedures, were invalid. *Id.* ¶ 120–21. Approximately two months later, IOMAXIS informed Hurysh that it had found "Cause" for his removal and would be exercising its "right" to buy back his share of the Company at a total price of $1.7 million. *Id.* ¶ 123–24. Hurysh objected to IOMAXIS's calculation of the value of his ownership interest, in consequence of which the Company appointed a third-party appraiser to conduct a valuation. The appraiser ultimately determined the value of Hurysh's interest to be $934,000. ECF No. 1 ¶

4

34. In June 2021, IOMAXIS executed a promissory note in that amount and tendered it to a bank for deposit in an account held in escrow for the benefit of Hurysh. *Id.* ¶¶ 36–41.

In February 2022, Hurysh sent IOMAXIS a demand letter seeking access to its records so that he could "value his respective membership interests" and "investigate potential wrongdoing" regarding the Company's operations. *Id.* ¶ 42. IOMAXIS responded that, since Hurysh was no longer a Member, he had no right to view the Company's documents. That same day, IOMAXIS initiated the present lawsuit and, a month later, filed its Motion for Summary Judgment (ECF No. 11). Along with his Answer to IOMAXIS's Complaint, Hurysh has asserted a number of Counterclaims against IOMAXIS and Buhr. ECF No. 18. IOMAXIS and Buhr responded by filing a Motion to Dismiss now before the Court. ECF No. 25. On September 20, 2022, the Court held a hearing on both Motions and took both under advisement, after which the parties submitted supplemental briefing on a specific issue of law related to contract ratification and fraud. ECF Nos. 46–48.

## II.  LEGAL STANDARD

### A.  Motion for Summary Judgment

Federal Rule of Civil Procedure 56 reads, in relevant part, that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). Summary judgment is rarely granted before discovery has taken place. *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011).

5

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction challenges a court's authority or competence to hear the case. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). Motions to dismiss pursuant to Rule 12(b)(1) are properly granted where a claim fails to allege facts upon which the court may base jurisdiction. *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996).

**C. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although a district court must accept as true all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, that tenant "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

**A. Motion for Summary Judgment**

IOMAXIS asks the Court to declare that it properly removed Hurysh as one of its Members pursuant to the Delaware Operating Agreement. Hurysh counters that he remains a Member of the Company because his signatures on the 2015 Agreements and 2017 Ratifications were fraudulently induced, rendering the Delaware Operating Agreement voidable.

6

There is clearly a dispute of material fact between the parties as to which Operating Agreement applies, the North Carolina one or the Delaware one. But IOMAXIS submits that this quarrel is irrelevant because the case can be decided as a matter of law. Specifically, IOMAXIS asserts that, for a number of reasons, Hurysh is precluded from challenging the Delaware Operating Agreement, even if he was a victim of fraudulent inducement. At this stage of the proceedings, the Court finds none of IOMAXIS's reasons convincing as a matter of law.

First, IOMAXIS says Hurysh cannot base his fraudulent inducement claim on Buhr's "unfulfilled promise" to give him additional shares. *See* ECF No. 18 ¶ 71. But Hurysh's Counterclaim makes clear that this alleged promise was not and is not the sole basis for his purported reliance on Buhr's misrepresentations.

Second, IOMAXIS submits that Hurysh could not possibly have been fraudulently induced because he signed the 2015 Agreements a month before Howard gave his purported telephonic approval. But the timing of Hurysh's signature is not dispositive, since Hurysh does not claim he signed *only after* seeing Buhr's telephonic approval notation. In fact, Hurysh's Counterclaim suggests that the basis for his reliance was actually Buhr's oral representations that Howard agreed with the plan to move the company to Texas. *See Id.* ¶ 70. Accordingly, the timing of Hurysh's signature does not lead to summary judgment in IOMAXIS's favor.

Third, IOMAXIS raises identical arguments regarding Hurysh's signature on the 2017 Ratifications. But North Carolina law is clear: ratification is not preclusive "unless, at the time of such act, the victim had full knowledge of the facts and was then capable of acting freely." *Link v. Link,* 179 S.E.2d 697, 706 (N.C. 1971); *accord Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.,* 555 S.W.3d 29, 52 (Tex. 2018). Assuming, as the Court is obliged to do at

this stage,[3] that Hurysh was relying on Buhr's alleged misrepresentations when Hurysh signed the 2017 Ratifications, he arguably cannot be said to have had "full knowledge of the facts." Accordingly, Hurysh's signature on these documents is not fatal to his claim.

Fourth, IOMAXIS contends that three ratification and integration clauses included in various documents signed by Hurysh preclude his challenge. Not so. To start, none of the documents that comprise the 2015 Agreements include any integration or ratification clause. The only document from 2015 that does contain such a clause is the Texas Operating Agreement (ECF No. 18-10), but that document is signed only by Buhr. It would be entirely inappropriate, at this stage at least, for the Court to bind Hurysh to a document he never signed and whose validity he challenges.

As to the other two clauses, neither requires the Court to grant summary judgment for IOMAXIS.

The clause from the 2017 Equity Repurchase Agreement reads:

> Neither the Company, the Buyer nor any other person has made, and such Seller is not relying on, any oral or written representation (express or implied), inducement, promise or agreement to such Seller in connection with the transactions contemplated by this Agreement (including the purchase and sale of the Purchased Equity), other than as expressly set forth in this Agreement.

The clause from the 2020 Restated Texas Operating Agreement reads:

> This Agreement sets forth the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior or contemporaneous agreements and understandings, oral or written, relating thereto. No representation, promise, inducement or statement of intention has been made by any of the parties hereto which is not embodied in this Agreement and none of the parties hereto will be bound by or liable for any alleged representation, promise, inducement or statement of intention not so set forth.

---

[3] In deciding a motion for summary judgment, the court must accept as true the allegations of the non-movant (in this case, Hurysh). *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

Under Texas law, a clause must contain "clear and unequivocal" language of disclaimer

of reliance to defeat a fraudulent inducement claim.[4] *Italian Cowboy Partners, Ltd. v. Prudential*

*Ins. Co. of Am.*, 341 S.W.3d 323, 336 (Tex. 2011). Certainly, these two clauses, at least

arguably, appear to do that. However, the Court is not prepared to grant summary judgment

based on this language alone. There is no *per se* rule that a disclaimer clause *always* nullifies

fraudulent inducement. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008). Instead,

"courts must always examine the contract itself and the totality of the surrounding circumstances

when determining if a waiver-of-reliance provision is binding." *Id.* at 60. The Court is obliged

to consider a number of factors, including whether:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during
> negotiations the parties specifically discussed the issue which has become the
> topic of the subsequent dispute; (2) the complaining party was represented by
> counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the
> parties were knowledgeable in business matters; and (5) the release language was
> clear.

*Id.* Although IOMAXIS makes representations regarding these factors in its supplemental

briefing, ECF No. 48 at 3, discovery that is critical to the Court's analysis of the Operating

Agreements has yet to occur. Therefore, the Court declines to grant summary judgment in favor

of IOMAXIS on the basis of this argument.

Fifth and finally, IOMAXIS argues that Hurysh waived his right to challenge the

Delaware Operating Agreement when he failed to object after Howard's estate raised the specter

of fraud. But, again, this argument improperly assumes that Hurysh had "full knowledge" of

Buhr's alleged fraud when he signed the 2020 Restated Texas Operating Agreement. The Court

does not have before it an undisputed timeline of when Hurysh became aware of particular fraud

---

[4] The Court's citation to Texas cases does not necessarily mean that Texas is the proper choice of
law going forward.

allegations, especially since discovery has yet to take place. As the movant, it is IOMAXIS's burden to prove the point at which Hurysh had "full knowledge" of the alleged fraud. This IOMAXIS has not done, nor is it likely, at this point anyway, that it could.

The Court notes that it makes these findings only for the purposes of resolving IOMAXIS's present Motion for Summary Judgment. Discovery may yet provide answers to these questions, which could lead to a determination of which Operating Agreement controls. But the Court is unable to decide the issue at this time as a matter of law. IOMAXIS's Motion for Summary Judgment is therefore **DENIED**.

**B. Motion to Dismiss**

Hurysh asserts five Counterclaims against IOMAXIS and Buhr, all of which they seek to dismiss. Three of Hurysh's Counterclaims are against IOMAXIS only: a claim for declaratory judgment (Counterclaim I), a claim for an accounting and inspection (Counterclaim II), and a claim for indemnification (Counterclaim III). Hurysh also asserts a claim for tortious interference with prospective business relations against both IOMAXIS and Buhr (Counterclaim IV), and a claim for unjust enrichment against Buhr alone (Counterclaim V).

**1. Motion to Dismiss Counterclaims II, IV, and V Pursuant to Rule 12(b)(1)**

IOMAXIS and Buhr argue that the Counterclaims for accounting and inspection (II), tortious interference with prospective business relations (IV), and unjust enrichment (V) must be dismissed because the Court lacks subject matter jurisdiction over them. But the short answer is

that the Court need not rely on an exercise of supplemental jurisdiction here, as it already has original diversity jurisdiction over the Counterclaims.[5]

Diversity jurisdiction exists in cases where no plaintiff is a citizen of the same state as any defendant, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Those requirements are met here: Hurysh is a Maryland citizen, a state in which neither IOMAXIS nor Buhr is domiciled,[6] and the amount in controversy easily exceeds $75,000.[7] Accordingly, the Motion to Dismiss Counterclaims II, IV, and V for lack of subject matter jurisdiction is **DENIED**.

### 2. Motion to Dismiss Counterclaims I–V Pursuant to Rule 12(b)(6)

IOMAXIS and Buhr also move to dismiss all five Counterclaims for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

---

[5] Both IOMAXIS's Complaint (ECF No. 1) and Hurysh's Counterclaim (ECF No. 18) assert that the Court has federal question jurisdiction (28 U.S.C. § 1331) pursuant to the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. But the DJA "is not itself a basis for federal subject matter jurisdiction." *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*, 118 F.3d 205, 210 (4th Cir. 1997) (quoting *City Nat'l Bank v. Edmisten*, 681 F.2d 942, 945 n.6 (4th Cir. 1982). Regardless, the Court is independently obligated to raise and decide issues of jurisdiction, even those the parties may have overlooked. *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012).

[6] IOMAXIS is incorporated either in North Carolina or Delaware, and its headquarters appear to be in Virginia. Buhr is domiciled in Virginia.

[7] The Court notes that it has personal jurisdiction over IOMAXIS as Counter-Defendant, even though it is a foreign corporation, because the company purposefully availed itself of the benefits of this state when it filed the lawsuit. *See Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932); *Adam v. Saenger*, 303 U.S. 59, 67 (1938); *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016); *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 23 (1st Cir. 1991); *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir. 1974). As for Buhr, he has consented to personal jurisdiction in this forum. ECF No. 32.

### a. Counterclaim I (Declaratory Judgment)

Hurysh seeks a declaration that IOMAXIS remains bound by the North Carolina Operating Agreement and therefore never properly removed him as a Member.[8] IOMAXIS's argument for dismissal is identical to its argument in support of summary judgment, i.e. that Hurysh is precluded from attacking the Delaware Operating Agreement. But for the same reasons stated in the Court's summary judgment analysis, it likewise finds that Hurysh may challenge the Delaware Operating Agreement and has plausibly stated a claim with respect to it. The Motion to Dismiss Counterclaim I on 12(b)(6) grounds is **DENIED**.

### b. Counterclaims II (Accounting and Inspection) and III (Indemnification)

In Counterclaims II and III, Hurysh asks the Court to declare he is entitled to inspect the Company's financial records and to be indemnified by IOMAXIS in the North Carolina Action. IOMAXIS seeks to dismiss both Counterclaims because an "accounting and inspection" is not an independent cause of action, and because a claim for indemnification is premature when related litigation is pending.[9] But that argument misses the point. Contrary to IOMAXIS's characterization, Hurysh is not actually demanding the Court award him an accounting and indemnification outright. Instead, he asks for a *declaration* that he is entitled to these remedies if he ultimately prevails in the litigation.[10] There is nothing improper or "premature" about such a

---

[8] In the alternative, Hurysh asks for a declaration that IOMAXIS lacked sufficient "Cause" to remove him and improperly valued his shares. ECF No. 18 ¶ 163–64.

[9] The "related" litigation in this case is twofold: the North Carolina Action and the other case before this Court involving the same parties, *IOMAXIS, LLC v. Hurysh et al.*, No. 8:20-cv-03612-PJM (D. Md.).

[10] ECF No. 18 ¶ 172 ("Hurysh demands that the Court *declare* that he be given the opportunity to review and inspect certain financial records…") (emphasis added); *id.* ¶ 180 ("Hurysh seeks a *declaration* that he is entitled to indemnification…") (emphasis added).

request. Accordingly, the Motion to Dismiss Counterclaims II and III on 12(b)(6) grounds is **DENIED.**

### c. Counterclaim IV (Tortious Interference with Prospective Business Relations)

Hurysh alleges in Counterclaim IV that IOMAXIS and Buhr tortiously interfered with his prospective business relations by reporting him to the U.S. Department of Defense ("DoD") for baseless claims of cyber misconduct.

In Maryland, there are four elements of tortious interference with business relations:

> (1) Intentional and willful acts; (2) calculated to cause damage to the plaintiff; (3) done to cause damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) damage resulting.

*Press v. United States*, No. CV JKB-17-1667, 2018 WL 1211537, at *8 (D. Md. Mar. 8, 2018).

IOMAXIS and Buhr argue that Hurysh has failed to plead the third and fourth elements, and that, in any event, they have absolute immunity for reporting a potential security violation to DoD. In advancing their argument, IOMAXIS and Buhr mistakenly treat the reasonableness of their report to DoD as a foregone conclusion. But they have overlooked an important step: if, as Hurysh alleges (which the Court must accept as true at this stage), the report was indeed "baseless," it is certainly plausible to maintain that IOMAXIS and Buhr acted "without right or justifiable cause" by filing it. *Id.* It defies both law and logic for IOMAXIS and Buhr to suggest they would be absolutely immune from liability even if, as Hurysh alleges, they filed an unfounded report with malicious intent.

On the other hand, IOMAXIS and Buhr are correct regarding the fourth element: Hurysh's Counterclaim, as written, does not allege *actual* damage he suffered as a result of the report. Hurysh repeatedly states what he *believes* IOMAXIS and Buhr intended to accomplish through the report, but he stops short of affirming whether any of those harms actually came to pass. ECF No. 18 ¶ 182–86. That being said, however, the Court will leave this Counterclaim in

13

the case for the time being, as Hurysh may, in fact, be able to point to damages in the course of discovery. Accordingly, the Court will **DENY** the Motion to Dismiss Counterclaim IV.

### d. Counterclaim V (Unjust Enrichment)

Hurysh accuses Buhr of improperly taking "significant amounts" of IOMAXIS's money for personal use, resulting in a reduction in the value of Hurysh's ownership interest. *Id.* 190–92. Buhr counters that Hurysh's unjust enrichment claim cannot survive where the value of the Members' shares is governed by an express contract.[11]

Buhr is correct on this point. "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998). Regardless of which Operating Agreement the Court ultimately finds controlling, they are all express contracts governing the valuation of Members' ownership interests, and both Buhr and Hurysh are parties to them. *See* North Carolina Operating Agreement at 1 (ECF No. 18-1); Delaware Operating Agreement at 1 (ECF No. 18-14). Therefore, as currently pled, Hurysh's unjust enrichment claim cannot stand as a matter of law. While Hurysh may yet have a viable claim against Buhr for alleged misuse of Company funds, unjust enrichment does not appear to be the proper vehicle through which to advance it. For that reason, the Motion to Dismiss Counterclaim V is **GRANTED WITHOUT PREJUDICE.**

---

[11] Because the Court dismisses Counterclaim V on other grounds, it need not reach a conclusion on Buhr's alternative argument that no benefit was conferred on him by Hurysh.

14

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**

1. The Motion of IOMAXIS for Summary Judgment (ECF No. 11) is **DENIED.**

2. The Motion of IOMAXIS and Buhr to Dismiss (ECF No. 25) is **GRANTED IN PART AND DENIED IN PART.**

   a. The Motion is **DENIED** with respect to Counterclaims I, II, and III.

   b. The Motion is **DENIED WITHOUT PREJUDICE** with respect to Counterclaim IV.

   c. The Motion is **GRANTED WITHOUT PREJUDICE** with respect to Counterclaim V.

3. Hurysh **SHALL HAVE** thirty (30) days from the entry of the accompanying Order to seek leave to amend his Complaint. IOMAXIS and Buhr **SHALL HAVE** twenty (20) days thereafter to respond and Hurysh **SHALL HAVE** ten (10) days to reply.

4. Counsel for the parties are **DIRECTED** to submit a Joint Proposed Scheduling Order to the Court within thirty (30) days from the date of entry of the accompanying Order.

A separate Order will ISSUE.

November _2_, 2022

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE