IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MAXISIQ, INC., f/k/a MAXISIQ, LLC AND IOMAXIS, LLC, d/b/a IOMAXIS,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS HURYSH, JR.,<br><br>Defendant. | |
| NICHOLAS HURYSH, JR.,<br><br>Counter-Plaintiff,<br><br>v.<br><br>MAXISIQ, INC., f/k/a MAXISIQ, LLC AND IOMAXIS, LLC, d/b/a IOMAXIS,<br><br>Counter-Defendant. | Civil No. 22-0314 PJM |
| NICHOLAS HURYSH, JR.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>BRAD C. BUHR, f/k/a BRAD BOOR,<br><br>Third-Party Defendant. | |

1

## **MEMORANDUM OPINION**

In this dispute, MAXISIQ, Inc. ("IOMAXIS" or the "Company"), a communications and computing services corporation, sought to terminate and buy out one its Member-employees,[1] Nicholas Hurysh, Jr. In February 2022, IOMAXIS filed this declaratory judgment action seeking a determination that it properly terminated Hurysh's employment, properly removed him as a Member, properly valued his ownership interest, and properly repurchased his ownership interest; in short, IOMAXIS asks the Court to declare that Hurysh currently has no rights as a Member in the Company. Hurysh has responded by raising competing counterclaims for declaratory judgment, accounting and inspection, indemnification, and tortious interference with prospective business relations (also raised in a third-party claim against the Company's managing member, Brad C. Buhr).

The Court now considers IOMAXIS's Motion for Summary Judgment (ECF No. 114), Hurysh's opposition, as well as Hurysh's own Motion for Summary Judgment (ECF No. 115), and IOMAXIS's opposition. Having reviewed the parties' briefs and oral argument on the Motions, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** IOMAXIS's Motion for Summary Judgment (ECF No. 114) and **GRANTS IN PART AND DENIES IN PART** Hurysh's Motion for Summary Judgment (ECF No. 115).

### I. BACKGROUND

The Court incorporates the Background of its Memorandum Opinion dated November 2, 2022. ECF No. 49. Since then, the parties have stipulated (solely for purposes of this action), that, as between them, the Delaware Operating Agreement ("DE-OA") controls and Delaware law governs their dispute. ECF No. 76. As detailed in the Court's prior Opinion, the DE-OA was

---

[1] "Member" refers to those with an ownership interest in IOMAXIS. Hurysh owned 10% of the Company.

amended shortly after its adoption to provide a mechanism for the removal of Members (the "First Amendment"). *See* ECF No. 49 at 4. IOMAXIS relied on the First Amendment when it sought to remove Hurysh as a Member.[2]

### A. Procedural Posture and Undisputed Timeline of Events

The parties' dispute was initially triggered by a North Carolina state court lawsuit brought by the Estate of a former Member against IOMAXIS that raised the issue of which of several operating agreements involving the Company were operative. In the course of defending that lawsuit, IOMAXIS agreed to indemnify all Members of the Company represented by common counsel, including Hurysh. ECF No. 18 ¶ 26, 37–43; *see* ECF No. 49 at 3. However, during the defense of that suit, Hurysh claims that he "refused to misrepresent discovery responses, participate in the destruction of discoverable information, and sit by idly while [Buhr] used the company as his personal bank." ECF No. 115-1 at 1. The DE-OA was enacted in this same timeframe, in August 2020. *Id.* at 4.

Whatever the merits of Hurysh's underlying disagreements with the Company, IOMAXIS ended Hurysh's employment in September 2020 when Hurysh refused to take a part-time role that the Company had offered him. ECF No. 115-1 at 6. Thereafter, in October 2020, IOMAXIS advised Hurysh he would be responsible for all of IOMAXIS's and all of its Members' legal fees in the North Carolina lawsuit because of the "extensive damage" Hurysh allegedly caused their defense strategy. ECF No. 18 at ¶¶ 101, 104, 41–42. Further, in December 2020, IOMAXIS informed Hurysh that the First Amendment to the DE-OA had been enacted, *id.*

---

[2] The parties have stipulated that the First Amendment to the DE-OA "was properly adopted," but Hurysh expressly reserved the right to challenge its enforceability on the basis of "unequal effect on Mr. Hurysh's rights as set forth in Sec. 9.1(b)" of the DE-OA. ECF No. 76. Hurysh insists that he is not bound by the First Amendment. The Court will resolve this dispute below.

3

¶ 109, and in January 2021, IOMAXIS sent Hurysh written notice that it intended to invoke the First Amendment's new removal procedures. *Id.* ¶ 109.

Two months later, in March 2021, IOMAXIS told Hurysh it found "Cause" and would exercise its right to buy back his 10% share of the Company at a price of $1.7 million. *Id.* ¶¶ 123–24. Apart from disputing the applicability of the Cause finding as to him, Hurysh disagreed with the Company's valuation, in consequence of which—pursuant to the Amendment's required procedures—IOMAXIS hired an appraiser who valued Hurysh's interest at $934,000. ECF No. 1, Compl. ¶ 34. In June 2021, IOMAXIS deposited that amount in an account to be held in escrow for Hurysh. *Id.* ¶¶ 36–41. In February 2022, Hurysh sent IOMAXIS a demand letter seeking access to its records so that he might be able to "value his respective membership interests" and "investigate potential wrongdoing" regarding the Company's operations. *Id.* ¶ 42. IOMAXIS denied his request.

On February 7, 2022, IOMAXIS filed suit in this Court against Hurysh regarding his removal as a Member of the Company and his termination in 2020. ECF No. 1. IOMAXIS moved for summary judgment, ECF No. 11, to which Hurysh filed an answer which included five Counterclaims against IOMAXIS and Buhr. ECF No. 18. Three of Hurysh's Counterclaims are against IOMAXIS only: a claim for declaratory judgment (Counterclaim I), a claim for an accounting and inspection (Counterclaim II), and a claim for indemnification (Counterclaim III). Hurysh also asserted a claim for tortious interference with prospective business relations against both IOMAXIS and Buhr (Counterclaim IV) and a claim for unjust enrichment against only Buhr (Counterclaim V). On May 5, 2022, IOMAXIS filed a Motion to Dismiss Hurysh's counterclaims. ECF No. 25.

On November 2, 2022, the Court issued a Memorandum Opinion denying IOMAXIS's Motion for Summary Judgment and granting in part and denying in part IOMAXIS's Motion to Dismiss. ECF No. 49. The Court denied IOMAXIS's Motion to Dismiss Counterclaims I, II, and III, denied without prejudice the motion with respect to Counterclaim IV, and granted it with respect to Counterclaim V. *Id.*

On January 26, 2023, the Court entered an Order bifurcating trial. ECF No. 68.[3] Phase I of trial would address "the propriety of Hurysh's removal as a shareholder of IOMAXIS." *Id.* at 2. Phase II of trial would "address damages and equitable relief, including the valuation of Hurysh's shares in IOMAXIS, [and] any damages resulting from actions taken by Buhr that may have affected the value of Hurysh's shares." *Id.*

As a further background fact, Hurysh does not dispute that he retained Company property and did not return it until September 28, 2023 and, then, only when ordered to do so by the Court through a receiver. *See* ECF No. 115-1 at 5. He offers no plausible justification for the detention.

### A. The Relevant Contracts

The DE-OA originally provided that a Member could only be removed if (1) they died or became disabled, or (2) his/her employment was terminated for "Cause." ECF No. 115-4. However, Members could amend the DE-OA by invoking section 9.1 of the DE-OA, which reads, in relevant part, as follows:

> A proposed amendment will be adopted and be effective as an amendment hereto and binding on all of the Members only if it receives the approval of the Manager and a Majority-in-Interest; provided, that any amendment to this Agreement that adversely affects the rights, preferences and/or obligations of one or more of the Members with the same or similar interests in the Company but

---

[3] The Order also consolidated this case with IOMAXIS's trade secrets action, which IOMAXIS eventually dismissed. *MAXISIQ, LLC v. Hurysh*, Civ. No. 20-3612-PJM, ECF No. 144 (D. Md. Aug. 18, 2023).

> not all such Members equally, albeit adversely, must also receive separate approval of the holders of a majority of those Membership Units . . . .

ECF No. 115-3 at 18.

On December 7, 2020, IOMAXIS purported to amend the DE-OA to a provide for removal of Members who "engaged in conduct constituting Cause." ECF No. 115-4 at 3. The First Amendment gives IOMAXIS the right to redeem all shares from the offending Member. *Id.* The First Amendment defines "Cause" as follows:

> "**Cause**" shall be deemed to exist in the event: . . . a Member breaches (1) any material provision of the Company's or its Affiliates' internal policies, including its code of ethics; (2) any material provision of a law or regulation to which the Company, its Affiliates or its Members are subject; or (3) any obligation or duty set forth in this Agreement or other material agreement entered into between the Company or its Affiliates on the one-hand and a Member on the other hand, including but not limited to a Nondisclosure Agreement and/or the Nondisclosure and Non-solicitation Agreement.

*Id.* at 6 (emphasis added).

If enough Members agree to the ouster, the First Amendment outlines the process for determining whether Cause exists:

> A determination of **Cause** shall not take effect without Member first being given prior written notice which shall (A) state the particular act or acts or failure or failures to act that constitute the grounds on which the proposed determination for Cause is based and (B) be given within one hundred eighty (180) days of another Member or the Manager learning of such act or acts or failure or failures to act. Following such notice, Member shall be given a reasonable opportunity to be heard by the Company or other Members and to cure, to the extent capable of cure, the grounds stated in such notice. If, following such hearing, Member is furnished written notice by the remaining Members, confirming that Members holding a Majority-in-Interest (or a Supermajority-in-Interest if the matter pertains to a Member not then employed by the Company) believe there are grounds for Cause, and that the

6

> damage caused by the Member's underlying actions cannot be cured or sufficiently mitigated, then a finding of Cause shall exist.

*Id.* A "Supermajority-in-Interest" refers to "Members holding more than two-thirds (2/3) of the outstanding Class A Membership Units." *Id.*[4]

Once a Member is removed for Cause, the First Amendment provided a robust process to determine the "fair market value" of the removed Member's shares:

> (i) The Repurchase Price will be determined in good faith initially by the Manager, which may, but will not be obligated to, seek or rely upon the opinions of financial or investment advisors. The Company will notify such Member or his/her Personal Representative within five (5) days of the Manager's determination of the Repurchase Price. . . . If such Member or his/her Personal Representative notifies the Company that he or she contests the Manager's determination with reasonable support and detail, within fifteen (15) days . . . , then the Company will appoint an "Appraiser" who will in good faith determine the Repurchase Price and whose good faith determination will be final, conclusive and binding. Any Appraiser appointed by the Company (A) will have the requisite experience and knowledge to evaluate the Company and determine the Repurchase Price; (B) will have no prior professional relationship with either party except that such Appraiser may have performed prior appraisals on behalf of the Company, and (C) will take into account the value that the sale of such Membership Units would have if the Company were sold and the Net Capital Proceeds were distributed in accordance with Section 12.2.

*Id.* at 6.

Lastly, a Change of Control agreement, signed by Hurysh, required him to return all Company property he held by virtue of his employment with IOMAXIS upon his termination. ECF No. 12-1. Section 4(c) of their agreement reads as follows:

> (c) Employee agrees that, in the event his or her employment with the Company is voluntarily or involuntarily terminated for any or

---

[4] The parties agree that Buhr alone met this threshold and held a "Supermajority-in-Interest" over the rights of the other Members of the Company. Hurysh was the only Member not to sign the First Amendment. *See* ECF No. 115-4 at 8.

7

>no reason, he or she shall immediately return all the Company property and Confidential Information (including copies thereof and notes/reports, etc. created by Employee based on such information) in the possession of, or which was in any way obtained by Employee during his or her period of employment.

*Id.*

## II. LEGAL STANDARD

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When determining whether a fact is in dispute, a court must draw all reasonable inferences and construe ambiguities in favor of the nonmoving party. *See, e.g., United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The movant seeking summary judgment bears the initial burden of demonstrating that there exists no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this showing, the nonmoving party may not rest on mere allegations in his pleadings, *id.* at 324, or conclusory denials of fact. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). A fact is material, and a genuine disputes of such facts will preclude summary judgment, only if it is one that "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## III. DISCUSSION

IOMAXIS requests summary judgment on its claim for a declaratory judgment that it properly removed Hurysh as a Member and properly repurchased his ownership interest in the Company. ECF No. 114. IOMAXIS further asks for judgment in its favor on each of Hurysh's

counterclaims and his third-party claim. *Id.* Hurysh also seeks summary judgment in his favor with respect to his own declaratory judgment claim, as well as his counterclaims for accounting and inspection and indemnification against IOMAXIS. ECF No. 115.

**A. Hurysh Is Bound by the First Amendment**

The first question to be resolved is whether the First Amendment was properly adopted such that Hurysh is bound by it. The parties agree that the DE-OA and Delaware law govern their relationship. ECF No. 76 at ¶ 2. IOMAXIS contends that the First Amendment was "properly adopted" and that under Delaware law, the language of the DE-OA and First Amendment are unambiguous and clearly preclude a finding in favor of Hurysh. *JFE Steel Corp. v. ICI Ams., Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011). IOMAXIS further argues that under Delaware law, an LLC's removal of a member is final and unassailable if it follows the removal procedure set forth in its operating agreement. ECF No. 114-1 at 9 (citing *A & J Cap., Inc. v. L. Off. of Krug*, No. CV 2018-0240-JRS, 2018 WL 3471562, at *3 (Del. Ch. Jul. 18, 2018)). Hurysh responds in two ways to argue that he is not bound by the First Amendment: (1) the First Amendment, he says, is invalid because it adversely affected his membership rights and IOMAXIS did not receive his approval; and (2) adoption of the Amendment was a breach of the implied duty of good faith and fair dealing and a breach of other Members' fiduciary duties.

Under Delaware law, "contract interpretation is a question of law." *JFE Steel Corp.*, 797 Supp. 2d at 469. Moreover, if "the language of a contract is unambiguous, the Court interprets the contract based on the plain meaning of the language contained on the face of the document." *Id.* Hurysh's primary argument is that Section 9.1(b) precluded IOMAXIS from incorporating the First Amendment into the DE-OA as it "directly and unquestionably" affected his membership rights. ECF No. 129 at 12. He suggests that Section 9.1(b) requires the approval of

9

the Member whose rights are "adversely affect[ed]" unequally, and that because he did not vote for the First Amendment, it cannot bind him. IOMAXIS disagrees.

The Court concludes that Hurysh misinterprets the meaning of Section 9.1(b). It is true that, because the First Amendment was invoked against Hurysh to remove him as a Member, it "directly and unquestionably" affected his membership rights. However, just because the clause was used against Hurysh specifically, does not mean that the clause *itself* "adversely affect[ed]" his rights *unequally*. The clause is unambiguous and applies neutrally as to all Members. Parol evidence may not be used to contradict the unambiguous language of the DE-OA. *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012). Nothing in the First Amendment's language indicates that it specifically targets Hurysh. The First Amendment plainly designates the removal process as applicable to all Members. It neither mentions Hurysh specifically, nor cabins the scope of its applicability to any specific category or descriptor unique to Hurysh (or any other Member). Inasmuch as the First Amendment affects all Members equally, Hurysh's approval was not required.

As for Hurysh's claim, under Delaware law, for breach of the implied covenant of good faith and fair dealing, a claimant "'must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.'" *Wiggs v. Summit Midstream Partners, LLC*, C.A. No. 7801-VCN, 2013 WL 1286180, at *9 (Del. Ch. Mar. 28, 2013) (quoting *Cantor Fitzgerald, LP v. Cantor*, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)). Indeed, "[g]eneral allegations of bad faith conduct are not sufficient." *Id.* (quoting *Kuroda v. SPJS Hldgs., LLC*, 971 A.2d 872, 888 (Del. Ch. 2009)). That is the flaw in Hurysh's position, unwelcome as IOMAXIS's actions may have been. Hurysh's general allegations do not make the grade.

The Court also rejects Hurysh's claim for breach of fiduciary duty. *See* ECF No. 115-1 at 10 n.11 (arguing that IOMAXIS's conduct constituted "a breach of the other Members' fiduciary duties"). Under Delaware law, a "claim for the breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *ZRii, LLC v. Wellness Acquisition Grp., Inc.*, C.A. No. 4374-VCP, 2009 WL 2998169, at *11 (Del. Ch. Sept. 21, 2009) (citing *Heller v. Kiernan*, C.A. No. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002)). Again, Hurysh points to no specific fiduciary duty he was owed, other than his belief that he has been treated unfairly.

## B. IOMAXIS Legitimately Removed Hurysh as a Member for Cause

Having found that Hurysh is bound by the First Amendment, the next issue is whether IOMAXIS complied with it in removing Hurysh. As discussed above, the First Amendment outlines how a Member may be removed for "Cause" if he or she is "found to have engaged in conduct constituting Cause." ECF No. 115-4 at 3. Conduct constituting Cause includes when "a Member breaches . . . any material provision of the Company's . . . internal policies, including its code of ethics" or any "material agreement entered into between the Company . . . on the one-hand and a Member on the other hand." *Id.* at 6. Section 4(c) of the CIC agreement (which may be construed as an internal company policy), signed by Hurysh, required him to immediately return all Company property upon his termination of employment.

Hurysh does not dispute that he did not return the Company property when his employment with IOMAXIS ended in 2020, nor that he only did so after the Court ordered him to do so. Instead, Hurysh argues that his failure to return Company property did not harm the Company, or, at least IOMAXIS has not proved any such harm. The Court flatly rejects Hurysh's position. The harm to IOMAXIS was the deprivation of access to its property, which it only

recovered after being compelled to file a lawsuit. The damage was not cured by IOMAXIS's ultimate recovery of the property some three years after Hurysh's employment ended. Hurysh's failure to return Company property, arguably amounting to a conversion of Company property, indisputably damaged the Company. It is hard to escape the conclusion that Hurysh was actually using his detention of IOMAXIS's property as a bargaining chip to force it to accept his terms in this dispute.

Moreover, IOMAXIS scrupulously followed the procedures outlined in the DE-OA when it removed Hurysh as a Member: (1) it sent him a letter outlining what the Supermajority believed to be grounds for Cause to remove him and (2) the letter gave him an opportunity to be heard. IOMAXIS concluded by asserting that because "the Supermajority followed the agreed process, their decision is final." ECF No. 114-1 at 9.

Specifically, this is what IOMAXIS did. The Supermajority notified Hurysh of the Cause allegations in a January 22, 2021 letter stating that Hurysh "[w]rongfully retained and remained in possession of[] property belonging to IOMAXIS" in violation of § 4(c) of the Change of Control Agreement, which required the immediate return of "all Company property and violating and Confidential information" upon termination of employment. ECF No. 121, ¶¶ 6–7; ECF No. 12-1 at § 4(c); ECF Nos. 12-7–12-9. Hurysh admits that IOMAXIS's Members followed this step of the removal process. ECF No. 114, Ex. A, at 200:9-14.

The January 22, 2021 letter also requested a written statement from Hurysh in response and gave him the option to participate in a confidential Zoom hearing, i.e., "a reasonable opportunity to be heard." ECF No. 12-7. Hurysh, for some reason, declined to respond to the substantive Cause allegations. *See* ECF No. 12-1. Because of his intransigence and because he

12

remained in possession of Company property, the Supermajority determined that there were grounds for Cause and that his underlying actions could not be cured or mitigated. *Id.* ¶¶ 11–13.

The Court is satisfied that Hurysh was properly removed as a Member of IOMAXIS, and was properly terminated for Cause. To that extent, IOMAXIS's Motion for Summary Judgment will be **GRANTED**.

### C. A Genuine Issue of Material Fact Remains over the Valuation of Hurysh's Membership Interest.

Having found that Hurysh was properly removed as a Member, the Court considers whether the process of valuing Hurysh's membership was appropriate under the DE-OA. To be sure, once a Member is removed for Cause, the First Amendment provides a process to "make a good faith determination" of the "fair market value" of the removed Member's shares. ECF No. 115-4 at 4. The process contemplates two steps of "good faith" valuation determinations. *See id.* IOMAXIS claims that it followed the proper procedures set out in the DE-OA in valuing Hurysh's membership interest, as evidenced by the actions it took in accordance with the DE-OA. That, says IOMAXIS, is the end of the inquiry. ECF No. 114-1 at 10. Hurysh, now equipped with an expert evaluation of his own, asserts that the valuation contains "manifest error" and cannot have been determined in good faith. ECF No. 129-2 at 4.

The VSI report offered by IOMAXIS was created by Ayhan Nazli and Craig Stephanson of VSI. ECF No. 129 at 23. Nazli was the lead on the VSI report. *Id.* Nazli passed away in 2023, *id.*, and Stephanson admits that he billed only 1.5 hours on the VSI report. ECF No. 115-20 at 23:4–25:6. In support of his motion for summary judgment, Hurysh submitted a valuation by his own expert, David Witherspoon. ECF No. 115-21. Hurysh argues his valuation shows that the VSI report was "completed with a lack of good faith because it failed to consider and address material financial issues that any valuation expert would deem critical." ECF No. 129 at 19.

Witherspoon opines that the VSI report is "materially misleading, false" and unreliable. ECF No. 115-21 ¶ 20.

IOMAXIS argues that because the parties agreed to be bound by the valuation procedure, the Court should respect the DE-OA and should not second guess the valuation procedures of the appraiser. *Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, C.A. No. 4586-CS, 2013 WL 1955012, at *23 (Del. Ch. May 13, 2013) ("A court may not second-guess the appraised values that have been committed by contract to determination by the appraisers."). The problem, however, is that IOMAXIS ignores the terms of the DE-OA that require a "good faith" determination of value, which necessarily establishes a basis for challenge. An appraisal allegedly made in "good faith" could still be shot through with error, suggesting dubious good faith. That would obviously be intolerable.

The Court finds that there is an issue regarding whether the VSI Report was a good faith calculation of fair market value and IOMAXIS's Motion for Summary Judgment is **DENIED** in that respect. In any event, Hurysh's counterclaim and third-party claim for tortious interference with prospective business relations still remain pending, leaving the issue of his damages an open question.

### D. Hurysh Is Not Entitled to Accounting and Inspection as a Member, But He Is Entitled to Discovery as a Litigant.

Hurysh's counterclaim for accounting and inspection "demands that the Court declare that he be given the opportunity to review and inspect certain financial records of IOMAXIS sufficient for him to fully value his ownership interest in the company, and to audit the propriety of the company's business transactions and financial records." ECF No. 18 ¶ 172. Having found that Hurysh was properly removed as a Member in 2021, the Court concludes he did not have

14

accounting and inspection rights under the DE-OA at time of his request in 2022, and as to that claim IOMAXIS is entitled to summary judgment. That, however, does not put the issue to rest.

As a *litigant*, as opposed to Member, Hurysh *is* entitled to access IOMAXIS's books and records. Valuation of his stock is a matter yet to be tried. To the extent IOMAXIS has withheld any records in relation to Hurysh's counterclaim for accounting and inspection, the Court orders discovery **REOPENED** to allow Hurysh to examine IOMAXIS books and records in order to determine the value of his ownership interest in the Company as well as to determine whether any corporate funds have been wasted or misappropriated. This discovery shall be completed in the next thirty (30) days.

### E. Indemnification

Finally, Hurysh seeks summary judgment on his counterclaim for indemnification in the North Carolina lawsuit. IOMAXIS's motion for summary judgment does not affirmatively address this claim, but in its response to Hurysh's motion for summary judgment, IOMAXIS argues that "Hurysh has offered no evidence that he has incurred legal expenses to defend this claim . . . [o]r any evidence that he will incur legal expenses to defend a claim he has already settled." ECF No. 131 at 17. Hurysh responds that he is merely "seek[ing] a declaration that he is entitled to indemnification for defense fees and costs he has incurred in the NC Action, as well as a declaration that he does not owe IOMAXIS for any amounts previously paid by it to defend him and the other Defendants in the NC Action." ECF No. 18 ¶ 180. But he does state that he will, upon the entry of a declaratory judgment in his favor, submit a separate application for attorneys' fees and costs he incurred in the NC Action. ECF No. 115-1 at 29 n.40.

This is an easy call.

Under the DE-OA, Members are entitled to indemnification "[t]o the fullest extent permitted by applicable law." ECF No. 1-2 at 29. The DE-OA further states that the Company will "hold harmless each Indemnitee from and against any and all losses, damages, claims or liabilities" that "arise by virtue of such Indemnitee's performance or services for the Company ... provided that the Indemnitee's conduct will not have constituted gross negligence, willful misconduct or bad faith." *Id.* Presumably following the DE-OA's mandate, IOMAXIS decided to indemnify Hurysh from the filing of the North Carolina action to August 2020, for "all fees and costs associated with the NC Action." ECF No. 115-1 at 29. Then, in or around August 2020, IOMAXIS "ceased indemnifying Hurysh," while he was still a Member of the Company. *Id.*; ECF No. 115-11.

The short of the matter is that IOMAXIS simply did not like the testimony Hurysh gave in the North Carolina litigation. Not only does it want to take its promise of indemnification back; IOMAXIS apparently wants Hurysh to pay for all its expenses connected with the North Carolina suit. Talk about overreach totally divorced from any law or policy!

IOMAXIS agreed to indemnify Hurysh. Period. Indemnification did not depend on whether IOMAXIS found his testimony positive or negative. It has shown no gross negligence, willful misconduct, or bad faith on Hurysh's part. Presumably Hurysh took an oath in North Carolina to testify truthfully, not to do so only by conforming himself to the pleasure of IOMAXIS. No witness taking an oath in court is expected to testify other than according to his or her view of the truth. If IOMAXIS vetted Hurysh beforehand, it might have decided not to call him—and, if IOMAXIS felt he might in any way be hostile, of course, it might have decided not to indemnify him in the first place. No wiggle room for IOMAXIS here. They must indemnify him.

IOMAXIS's request that Hurysh pay back *all* of IOMAXIS's expenses is simply too farfetched and fanciful as to merit serious analysis or discussion. Accordingly, the Court **GRANTS** summary judgment in favor of Hurysh as to his Indemnification Counterclaim. He is entitled to full indemnification and has no responsibility for any other expenses IOMAXIS may have incurred in the North Carolina litigation.

## CONCLUSION

Summing up,

1. As to IOMAXIS's Motion for Summary Judgment (ECF No. 114):

    a. It is **GRANTED** as to Count I in favor of IOMAXIS with respect to Hurysh's proper removal as a Member and Hurysh's Counterclaim II (Accounting & Inspection). The First Amendment to the DE-OA is declared to be valid and was properly invoked to remove Hurysh as a Member.

    b. It is **DENIED** as to Count I with respect to the valuation of Hurysh's shares. Material disputes of fact remain over the value of Hurysh's shares.

2. As to Hurysh's Motion for Summary Judgment (ECF No. 115):

    a. It is **DENIED** as to Count I, Counterclaim I (Declaratory Judgment), and Counterclaim II (Accounting & Inspection).

    b. It is **GRANTED** as to Hurysh's Counterclaim III (Indemnification).

3. The Court orders discovery **REOPENED** to allow Hurysh to examine IOMAXIS's books and records in order to determine the value of his shares as well as to determine whether any corporate funds have been wasted or misappropriated. This discovery shall be completed within thirty (30) days.

November 5, 2024

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE